UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARRA LITTLE,

        **Plaintiff,**                              **CASE NO.:  8:16-cv-00578-T-36AEP**

**v.**

**HALSTED FINANCIAL SERVICES, LLC,**

        **Defendant.**

_____/

## PLAINTIFF'S SECOND MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

Plaintiff, Harra Little ("Plaintiff" or "Ms. Little"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 55(b), hereby files this Second Motion for Entry of Default Judgment against Halsted Financial Services, LLC ("Defendant"), and as grounds therefore states as follows:

1.      Plaintiff brought suit against Defendant for violations of the Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Protection Act ("FCCPA") on March 10, 2016.  Doc. 1.[1]

2.      Service of the Summons and Complaint in this matter was duly effectuated on Defendant in compliance with Federal Rule of Civil Procedure 4 on March 15, 2016.  A copy of the Affidavit of Special Process Server was filed in this case on March 14, 2016.  Doc. 6.

3.      Defendant did not seek nor obtain an extension of time to respond to the complaint.

4.      Defendant failed to file a responsive pleading or motion within the time specified by Federal Rule of Civil Procedure 12(a).

---

[1]Another case, *Little v. Halsted Financial Services, LLC*, 8:15-cv-00820-CEH-MAP, was filed on April 6, 2015, and alleged the same underlying facts as the instant case.  In that case, as here, the Defendant defaulted despite proper service.

1

5. On April 28, 2016, Plaintiff filed a Motion for Entry of Clerk's Default against Defendant.  Doc. 9.

6. The Clerk's Default was entered on April 29, 2016.  Doc. 11.

7.  On June 7, 2016, Plaintiff filed her first Motion for Default Judgment.  Doc. 12.

8. On March 7, 2017, the Court entered an order denying the first Motion for Default Judgment without prejudice.  Doc. 13. In that Order, the Court identified deficiencies in the first Motion for Default Judgment and gave Plaintiff the opportunity to remedy those deficiencies by filing an amended complaint.  On March 8, 2017, an Amended Order was entered allowing Plaintiff the opportunity to cure the same deficiencies by filing supporting affidavits.  Doc. 14.

9. Plaintiff has remedied those deficiencies by affidavit, as detailed below.

**MEMORANDUM OF LAW**

**I.      Default Judgment Should Be Entered Against Defendant**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a "party must apply to the court for a default judgment."  Defendant has defaulted in this matter (Doc. 11) and Plaintiff is therefore entitled to a default judgment.  Plaintiff verified the facts of the complaint under penalty of perjury in the original action against Defendant.  *See* Case No. 8:15-cv-00820-CEH-MAP, Doc. 1, p. 10. See *Bentley Motors Ltd. Corp. v. McEntegart*, 976 F. Supp. 2D 1297, 1302 n.1 (M.D. Fla. 2013) ("[T]he Court considers the verified Complaint to be the evidentiary equivalent of an affidavit for purposes of evaluating" a summary judgment motion) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)).

The facts alleged in the Complaint form a factual basis on which to grant a default judgment. Further, attached as **Exhibit "A"** to this Second Motion for Default Judgment is the Affidavit of Harra Little in which Plaintiff reaffirms the allegations of the complaint.  *See United States v. Nat'l Business Info. Corp.*, 2011 WL 1002857, at *1 (M.D. Fla. Feb. 28, 2011) ("A court may enter a

2

default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment.").  Here, Defendant violated the FDCPA and FCCPA by repeatedly calling Plaintiff in attempt to collect on a the Debt after Plaintiff informed Defendant's representatives that she was unable to pay the debt, although Plaintiff stated that she may be able to make payments in 3-4 months.  Further, Defendant's representative stated that Defendant could not wait 3-4 months for Plaintiff to make payment and Defendant would make a recommendation to perform an asset verification through Plaintiff's employer since Plaintiff was refusing to pay.  Defendant's representative stated that he would call Plaintiff's human resources department immediately after the above mentioned phone call to verify Plaintiff's assets and income in order to file suit against Defendant. Defendant's representative also implied that Defendant would garnish Plaintiff's wages by stating that Defendant would determine how much can be withdrawn and paid each month from Plaintiff's income.  Neither Defendant nor the original creditor, Credit One Bank, have obtained a judgment against Plaintiff.  Defendant's actions amount to violations of the FDCPA and FCCPA.

      a.      **"Consumer Debt"**

In its March 7, 2017 Order, the Court identified that a deficiency in the first Motion for Default Judgment that affected Plaintiff's claims under both the FDCPA and FCCPA.  Both the FDCPA and FCCPA only regulate the collection of "consumer debts."  *See* 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(6).  Consumer debts are defined under both the FDCPA and FCCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id*.  In ruling on the first Motion for Default Judgment, the Court held that "Little has

3

not alleged specific facts to support her conclusory allegation that the alleged debt was the subject of a transaction for personal, family, or household purposes." Doc. 14, p. 5.

In her affidavit, Little states that the debt allegedly owed to Credit One Bank and collected by Defendant originated from a personal credit card. Ex. A ¶ 4. Little "used the credit card to pay for personal expenses, including groceries, gas, and paying personal bills." *Id*. The credit card was not used for business expenses. *Id*. Therefore, the Debt arose primarily for personal, family, or household purposes. *See e.g. Dina v. Cuda & Assoc.*, 950 F. Supp. 2d 396, 401 (D. Conn. 2013) (credit card debts that collector was attempting to collect upon were primarily for personal purposes where consumer never had business credit card and purchases on card were for a moving company, manicure, jewelry, and clothing).

Because the Debt at issue in this litigation is a "consumer debt" as defined by both the FDCPA and the FCCPA, the Court may find that the conduct described in the complaint violated those statutes, as detailed below.

### b. FCCPA & FDCPA Violations

Count I of the Complaint brings a claim for violation of the FCCPA, Section 559.72, Florida Statutes. The FCCPA forbids a debt collector to "[c]ommunicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection." Fla. Stat. § 559.72(5). Further, the FCCPA forbids a debt collector from "willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor. Moreover, the FCCPA forbids a debt collector from "assert[ing] the existence of some other legal right when such person knows that the right does not exist." Despite having prior knowledge that neither Defendant nor the

4

original creditor have obtained a judgment against Plaintiff, Defendant threatened to call and speak to Plaintiff's employers regarding income verification and garnish Plaintiff's wages.

Under Section 559.77(2), Florida Statutes, "any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." Thus, the statutory damages under the FCCPA are $1,000.

Count II of the Complaint alleged a violation of the FDCPA based on the same conduct, asserting claims under 15 U.S.C. § 1692(d), (e), and (f). *See e.g.*, *Masciarelli v. Richard J. Boudreau & Assoc.*, LLC, 529 F. Supp. 2d 183, 186 (D. Mass. 2007) (granting summary judgment in plaintiff's favor holding that "Boudreau's false threats to contact Masciarelli's employer and garnish his wages also violated the FDCPA.") (internal citations omitted). Like the FCCPA, the FDCPA sets a statutory damages award amount of $1,000. 15 U.S.C. § 1692k(a)(2)(A).

## II.     Attorneys' Fees

Both the FDCPA and FCCPA provided for reasonable attorneys' fees and costs. *See* Fla. Stat. § 559.77(2); 15 U.S.C. § 1692k(a)(3). To date, Plaintiff has incurred reasonable attorney's fees in the amount of $5,062.50 and costs in the amount of $455.

"Calculating an appropriate fee award under federal law involves a two-step process. The court first calculates the 'lodestar' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. The court may then adjust the lodestar upward or downward based on an evaluation of the factors articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that have not been subsumed in the lodestar calculation." *Raetano v. Msawel*, 8:12-CV-1625-T-30TBM, 2013 WL 1465290 (M.D. Fla. 2013) (*citing Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Ultimately, "the computation of a fee award is necessarily an exercise of judgment,"

because "there is no precise rule or formula for making these determinations." *Raetano*, 2013 WL 1465290, at \*1 (citations omitted). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id.

In assessing what constitutes a "reasonable hourly rate," courts consider the following twelve (12) factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in-volved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-36DAB, 2013 U.S. Dist. LEXIS 157669, \*9 (M.D. Fla. Nov. 4, 2013) (internal citations omitted).

In the first Motion for Default Judgment, undersigned counsel provided a declaration setting forth the time spent in litigating this matter and the hourly rates of those involved. The Court found that information insufficient and requested additional details. That information is set forth below.

### a.    Reasonable Hourly Rate

In its Order on the first Motion for Default Judgment, the Court held that the affidavit regarding attorneys' fees "fails to identify information regarding the respective skill and experi-ence levels of the billing attorneys." Doc. 14.

On balance, upon consideration of the factors set forth above, the hourly rates charged by Plaintiff's counsel in this matter (i.e., $375 per hour for partner Gus Centrone, with over ten years of experience, and $250 for Monica Sanchez, an associate with litigation) (collectively, hereinafter "Hourly Rates"), are in fact reasonable. *See* Declaration of Attorneys' Fees, attached as **Exhibit**

6

**B**.  This matter involved claims of consumer protection statutes, which are claims that typically require specialized knowledge regarding the state and federal statutes at issue and are most aptly addressed by attorneys specializing in consumer protection.  A biography of Centrone & Shrader is attached to the Declaration of Attorneys' Fees and sets forth the experience and expertise of counsel.  In *Lapointe v. Bank of America,* Case No. 8:15-cv-1402, the Hon. Richard A. Lazarra stated in his Order granting class certification that Centrone & Shrader has "significant litigation experience, and in particular, extensive experience in litigating statutory consumer claims." *Id.*, Doc. 56.

Further, Plaintiff counsel accepted the work on a contingency fee basis, bearing the risk of the possibility of no recovery.  Thus, thus even if the Court enters judgment on this Action, it remains to be seen whether any funds will ever actually be recovered from Defendant.

Finally, Centrone & Shrader's rate have been approved at these rates by other courts in the Middle District of Florida for similar work.  *See e.g. In re Booth*, 8:15-bk-12684-CPM, Doc. 10 (Bankr. M.D. Fla. February 22, 2017); *In re Bouvier*, 8:16-bk-00492-CPM, Doc. 12 (Bankr. M.D. Fla. October 5, 2016); *Harrier v. New Millennium Bank*, 8:14-cv-1108, Doc. 8 (approving counsel's work in 2014 at $325 per hour).  Moreover, Centrone & Shrader's current hourly rates in a commercial litigation matter have also recently been approved by Judge Lazarra after summary judgment.  *See GPS Granite LTDA v. Stone Outlet, LLC*, 8:16-cv-00202-RAL-AEP, Doc. 40 (M.D. Fla. Feb. 23, 2017).

Moreover, the Hourly Rates charged by counsel for Plaintiff, ranging from $250 to $375, are commensurate with the range of fees charged by other consumer protection attorneys, as well as those that have been awarded by courts in the Eleventh Circuit and specifically, the Middle District of Florida.  *See e.g. Hepsen v. J.C. Christensen and Assocs., Inc.,* 394 Fed. App'x 597, 600 (11th Cir.2010) (*per curiam* ) (finding that a magistrate judge in the Middle District of Florida did

7

not abuse her discretion in setting the reasonable hourly rate at $300 in a case involving claims under the FDCPA); *Selby v. Christian Nicholas & Assocs., Inc.,* No. 3 [:]09–cv–121–J–34JRK, 2010 WL 745748, at *5 (M.D. Fla. Feb.26, 2010) (finding $200.00 to be a reasonable rate for an attorney and $95.00 to be a reasonable rate for a paralegal in a case involving violations of the FDCPA in the Middle District of Florida); *Montgomery,* 2008 WL 3540374, at *13–*14 (finding $350.00 to be a reasonable hourly rate for an attorney and between $75.00 and $95.00 to be a reasonable rate for a paralegal in a case involving violations of the FDCPA and the FCCPA in the Middle District of Florida); *see Sharke v. Midnight Velvet, Inc.,* No. 8:12–cv–589–T–24AEP, 2013 WL 2467786, at *2–*3 (M.D.Fla. June 7, 2013) (finding $300.00 to be a reasonable hourly rate for a managing partner, $175.00 to be a reasonable hourly rate for an associate, and $100.00 to be a reasonable hourly rate for a paralegal in the Middle District of Florida for a case involving violations of the Truth in Lending Act).

For these reasons, the hourly rates sought by counsel in this matter are reasonable.

**b.     Reasonable Time Expended**

Likewise, the time expended by Plaintiffs' counsel was also reasonable.  In determining the number of hours reasonably expended on a case, "excessive, redundant, or otherwise unnecessary hours" must be excluded. *Clear Skies Nev., LLC v. Reece,* 2016 U.S. Dist. LEXIS 88125, *10 (M.D. Fla., June 15, 2016) (internal citation omitted). This being said, hours are not inherently redundant and/or unreasonable by virtue of the fact that multiple attorneys have worked on the same matter. *See ACLU v. Barnes,* 158 F.3d 423, 432 (11th Cir. 1999) ("[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case") (internal citation omitted).

Here, Plaintiffs' counsel only expended 14.8 hours. In order to maintain low costs, a significant portion of the work was performed by associate Monica Sanchez, under Gus Centrone's supervision, at a lower hourly rate. Further, given that this matter is being resolved on a default judgment, there has not been a significant amount of time expended to date. The primary tasks that have been performed are 1) the drafting, editing and filing of the complaint, and attendant documents; 2) the drafting, editing, and filing of certain procedural documents required by the court, such as the certificate of interested persons and related case notice; and 3) the drafting, editing and filing of the motions for default judgment. No work performed was redundant, excessive or unnecessary. In light of the variety of tasks performed by counsel, the total hours billed by counsel for Plaintiff are reasonable.

### c.     Costs

Finally, the Court requested an itemization of costs expended in this matter. Those costs are itemized and supporting documentation is provided in the Declaration of Attorneys' Fees. The only costs incurred are the $400 filing fee charged by the Clerk of the United States District Court, and the cost of service of process, which was $55. Those costs are necessary, reasonable and are likewise recoverable by Plaintiff. *See* 15 U.S.C. § 1692k (successful plaintiffs may recover "the costs of the action . . ."); Fla. Stat. 559.77(2) (person who violates the FCCPA is liable for "court costs," among other things); *see e.g. Sheeley v. Advanced Check Processing*, Case No. 3:10-cv-00231-J-34JBT, 2010 WL 4569868, at *2 (M.D. Fla. Sept. 13, 2010) (granting default judgment and awarding costs including filing fee and $55 for service of process).

9

### III.    Conclusion

Here, Defendant's conduct demonstrates a wanton disregard for the judicial process that is without a reasonable cause or excuse.   Defendant has been made aware of this lawsuit and was provided a Complaint and Summons.   Despite being made aware of this lawsuit, Defendant continues to ignore this lawsuit without reasonable cause or excuse and has failed to respond in accordance with Federal Rule of Civil Procedure 12(a) and 55(b).   Indeed, Defendant's policies to threaten to communicate with the debtors' employers before obtaining a judgment and continued use of deceptive collection efforts despite the fact that debtors tell Defendant that they are unable to make payments violates Fla. Stat. § 559.72(4), (7), and (9); and U.S.C. § 1692(d),(e), and (f) as specified in Plaintiff's Complaint.

Thus, the final calculation for the default judgment is, as follows:

$1,000.00      FCCPA statutory damages

$1,000.00      FDCPA statutory damages

$5,062.50      FCCPA & FDCPA attorneys' fees

$455.00        FCCPA & FDCPA costs

$7,517.50      Total

A copy of the Proposed Judgment is attached as "**Exhibit C**" to this Motion.


<u>**CONCLUSION**</u>

**WHEREFORE**, Plaintiff respectfully requests that the Court grant this Second Motion for Final Default Judgment pursuant to Federal Rule of Civil Procedure 55(b), and enter the Proposed Judgment as a Final Judgment in the amount of $7,517.50 and grant such further relief as the Court deems necessary and proper.

Dated:  March 20, 2017                                Respectfully Submitted,

                                                      **CENTRONE & SHRADER, LLC**
                                                      612 W. Bay St.
                                                      Tampa, Florida 33606
                                                      Phone:  (813) 360-1529
                                                      Fax:    (813) 336-0832

                                                      /s/ Gus M. Centrone
                                                      **GUS M. CENTRONE, ESQ.**
                                                      Florida Bar No. 30151
                                                      e-mail: gcentrone@centroneshrader.com
                                                      **BRIAN L. SHRADER, ESQ.**
                                                      Florida Bar No. 57251
                                                      e-mail: bshrader@centroneshrader.com
                                                      Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on March 20, 2017, I presented a true and correct copy of the

foregoing to the Clerk of the United States District Court for the Middle District of Florida, Tampa

Division, for filing and uploading to the CM/ECF system.


                                                       /s/ Gus M. Centrone
                                                      GUS M. CENTRONE, ESQ.


11